We raise a number of issues in our brief, but I'd like to focus on two in particular today because I believe they're dispositive. With my eight minutes, I'd like to address, first, the legal errors made by the IJ and the BIA in applying the wrong standard to deny DAS withholding of removal, and two, the legal remedy that flows from those errors. Before you do that, let me just ask, why shouldn't we rely solely on the BIA's opinion in this case? Because the BIA seems to have conducted a de novo review, and it relied on narrower grounds than the IJ. You mentioned that you were going to talk about both, and my question is, why shouldn't we just rely upon the board? Well, I believe because it's a single board member review that the IJ's opinion is also used in the analysis. And then, second of all, I believe the BIA made the same error that the IJ made. All right. Mr. DAS is entitled to withholding of removal if it is more likely than not that his life or freedom would be threatened on account of a protected ground. If he's established past persecution, he's entitled to presumption that he'll be persecuted in the future. In this case, Mr. DAS's uncontradicted, credible testimony establishes that he was persecuted on account of his religion and his race. Mr. DAS is an Indo-Fijian. That is a term used to describe a class of Indian immigrants brought over to Fiji to work as indentured servants. Since that time, Indo-Fijians have generally been precluded from politics, precluded from land ownership, and persecuted. He's also a Hindu, which is a religious minority. Mr. DAS testified that he was subject to repeated brutal attacks over a number of years from native Fijians in the Fijian army, including being held at gunpoint, beaten, spit and urinated upon, threw stones at his house in his van, they interrupted his prayers, burned his brother's house down, and raided and robbed his home. On these grounds, Mr. DAS was granted asylum. And the IJ at that time determined that she was persuaded that he would be subject to mistreatment and possibly deadly harm if returned to Fiji. As the government acknowledges, these prior assaults entitled Mr. DAS to a presumption that he'd be persecuted in the future. That did not happen here. The IJ and the BIA improperly shifted the burden to Mr. DAS. The IJ, her reasoning was that DAS's evidence was insufficient to grant withholding of removal. The government confirms this in their brief. The IJ ruled that petitioner's evidence did not sustain his burden of proof for withholding removal. The BIA, operating under the same standards, said the same. DAS failed to sustain his burden that it was more likely than not that he'd be subject to persecution if returned to Fiji. He did not have to put on any evidence at all. This was an improper burden shifting, and it independently warrants remand. Now I'd like to discuss the relief that is available as a result of these errors. This Court has the discretion and the authority to grant Mr. DAS withholding of removal and remand back to the BIA for proceedings consistent with this opinion. We ask that the Court do so here. The reason for this is that even though the IJ and the BIA applied an improper legal standard, the government nevertheless had a chance and put on its evidence regarding change country conditions. We know the government's position, we know the legal standard, and we have the two pieces of evidence the government submitted in an attempt to meet their burden. Now this evidence needs to focus on the specific harm to DAS and the specific grounds for his fear of persecution. It does not. In fact, you have already held that this exact type of evidence does not meet that burden. The first piece of evidence was a Yahoo News article, a one-page article that discusses nine members of the Indo-Fijian Labor Party joining the Cabinet. This is not individualized evidence regarding whether Mr. DAS is going to be subject to persecution by native Fijians or the Fijian Army. All that it establishes is that a party that generally supports Mr. DAS is now slightly more involved in the government. Second was a State Department country report on Fiji. This Court has held that these country reports are insufficient to overcome the government's burden. They are generalized evidence and they are not tailored to Mr. DAS. Only three pages of this report deal with the discrimination against Indo-Fijians and Hindus. And in fact, those three pages confirm the ongoing conflict between native Fijians and Indo-Fijians. And I quote, racial polarization was reflected in religious differences, which were largely along ethnic lines. Break-ins, vandalism, attempted arson, and thefts directed at houses of worship, predominantly Hindu temples, Mr. DAS's religion, continue to increase. Furthermore ---- Could I ask you about this specific or individualized argument? The original attack on the IJ's opinion is that it was riddled with legal and factual errors. And this particular claim that it wasn't tagged to sufficiently individualized determination didn't come up until the opening brief. So my question is, was that issue exhausted? It was exhausted. First, Mr. DAS was proceeding pro se, and so his standards are a little more lax. Second of all, he did, all that's required is that he raise the issue, and he did that. And last, it's also exhausted if the BIA makes its, raises the issue sui sponse, which they did in denying him withholding of removal. May I proceed? Please. Furthermore, increased, the document talks about increased attacks against religious facilities, particularly Hindu temples, and continued discrimination and racial and religious slurs against Indo-Fijians. And last, in a way that cuts against the Yahoo News article, it states the government pursued a policy of political predominance for ethnic Fijians. Thus, this case is indistinguishable from the case Shan v. INS. In that case, a Hindu Indo-Fijian, just like Mr. DAS, who is victim of, who is the victim of the same type of attacks, violent attacks, robbed, beaten, vandalized his home, by the same people, ethnic Fijians in the Fijian army, was denied asylum and was not granted the presumption of persecution. This Court did what we request here. It applied the correct standard, looked towards the evidence, afforded him the presumption, and sought for the correct evidence regarding change country conditions. The record contained, among other things, the same type of State Department report that we have here. That, just like we have, was a mixed bag. It did not find widespread human rights violations, but it did find significant social tension, inadequate police protection, and harassment and crimes against Indo-Fijians. This Court found this report a resource, but overly general, unspecific, and not the individualized analysis needed to overcome the government's burden. Also, it made clear that the racially motivated crime of the type the applicant faced, I'm sorry, the report made clear that the racially motivated crime of the type the applicant faced remains a problem. This Court said the remand was inappropriate because it was compelled to conclude that this evidence was not enough. It found him statutorily eligible for withholding removal, and I ask that the Court do so here. So your main point is there wasn't an individualized analysis of the country reports. Is that correct? Correct. All right. And that you would want a remand for that to occur? Or you think that we have the authority that would grant the petition? Correct. Okay. Why? Okay, go ahead.  May it please the Court? My name is James Hurley, and I represent the Attorney General. This petition for review should be dismissed in part and denied in part. First, this Court should dismiss Doss's due process and deficient performance claims because they were not properly exhausted for the agency. Second, the Court should deny the petition for review because Doss's asylee status was properly terminated based on his aggravated felony conviction for his corporal injury to his spouse. And then Doss does not merit withholding of removal or cap protection because the record evidence doesn't compel the conclusion that he'll be either – it's more likely than not that he'll either be persecuted or tortured upon his return to Fiji. Could we go right to that point? Because that seems to be the central issue here, and that is on the withholding, which is likely – and I don't want to say I've actually decided, but it's likely the only thing standing, so to speak, as you've said. The argument is made that this – that the determination by the BIA was widespread based on country conditions but wasn't particularized to this individual as we've required in our prior cases. Would you address that point? Yes. Well, first you have to look at the facts of this case. Mr. Doss originally was granted asylum by the immigration judge based on his testimony that he was working at this video store and these troops came in and they detained him and they beat him up and they urinated on his shoes. But then you also have to remember that Doss's wife testified during those – the original proceedings, and she said that she was raped twice in Fiji, once in 1987 and once in 1998. And after – they were both granted asylum. After that, he was convicted of assaulting his wife. DHS moved to reopen the case just on him. And the immigration judge in her decision, she said – it was the same immigration judge – she said during these past proceedings his wife's testimony played a large role in my decision in granting the asylum. In that reopen proceedings, the DHS came forward with the country report and the Yahoo article. This court has held that sometimes the country reports are the best evidence that they have. During this proceeding, DHS attorney asked Mr. Doss about – certain questions about the report, and he acknowledged that a labor party had started to participate in the government in Fiji and recognized that, I guess, the coup leader was incarcerated in Fiji, too. So based on that, the immigration judge found that DHS had met its burden to show that the circumstances had changed, so Mr. Doss no longer benefited from the presumption of future persecution. I think when you look at this case, you have to look at the facts, how he was originally granted asylum, and his wife's testimony played a large role in that. Could I just go back, though? He's still entitled to the presumption here, correct? No. You had said no? Because – I thought you said that in your brief. Well, there is a presumption there, but the DHS came forward with the evidence of the country reports and the – Well, that's a rebutting the presumption. So I'm sort of starting through. Oh, yeah, yeah. It's the presumption. He does, and then it's rebutted. And then you believe you've rebutted it. And then he doesn't meet his burden to show that it's more – Doesn't come back. That it's more likely than not. Okay. How do you distinguish this case from Chan v. INS, where a relatively recent case, which had – despite country reports, you still have to have an individualized analysis? Hopefully I'm not getting my cases confused, but I think in that case, Mr. Chan had – there was more persecution in his case, where he was actually assaulted on three occasions, I believe. And it wasn't part of this – the general unrest. In this instance, Mr. Das was talking about the 1987 – the coup then. And that's when he was detained at the JVC video store. And that's part of the general unrest in Fiji at the time. And then when he talks about what happened to him in 1998, he said groups of natives stormed his house and disrupted a prayer meeting. That would – I would distinguish Chan on the fact that, you know, he can't benefit from this generalized tumultuous situation in Fiji. I mean, Fiji, ever since – Let me just ask you, though, because even the case that Judge Nelson is citing kind of – it makes a statement unrelated to his circumstances, which basically says there needs to be particularized determination. And then we have other cases, Garavillas and others, that say there needs to be a particularized determination. And if not, we don't make a grant, but we remand so that the board can tie it up between the country reports or whatever. And so I'm wondering what would be your best authority for us to look at in the Ninth Circuit that would say, well, in some cases they don't need to be particularized. What's the best case for that? Well, I would just point to Chan. I think Judge Reinhardt said in a case that not every Indo-Fijian is entitled to asylum. He – you have to look at the specific facts of the case and – But that was the whole point, is that it isn't that just that there's big unrest and then everybody gets to come in under the tent or the umbrella. Exactly. But then I think what Judge Reinhardt said there and what we said in other cases is you kind of have to look at it case by case, so you have to tie up the country to the individual. And that seemed to me that what might be lacking here. Well, you have to look at the hearing that they had after this case was reopened when DHS came forward with this country report and they asked him about it. And the IJ gave him an opportunity to testify about why he thought he deserved withholding. And if you look at his testimony, he starts confusing some of the dates. You know, he mentions that certain things that when he first was before the immigration court, he said it happened in 1998. Then he starts saying that his house was ransacked in 1987. So if you look at what he said during that hearing, that went to the immigration judge's decision that he didn't meet his burden of proof. But that didn't show up in the BIA opinion. Where in the BIA opinion does it show that they gave an individualized analysis? Well, there's no specific words in the BIA's decision. But in this case, you have to look at both the BIA and the immigration judge's decision because the BIA just said it agreed with the immigration judge's determination in this case, and there's nothing specific on that point. So I guess that you're saying that we should look at both decisions and Mr. Jass's counsel is saying we should look at both decisions as well. Yes. All right. So that you agree on. Yes. Okay. So I would like to make a final point that this court shouldn't consider the extra record evidence of changed country conditions because that evidence should be presented to the agency in the first instance because they're in a position to either send it back to the IJ if they think so or determine that Mr. Das hadn't presented a prima facie case. And I'd also like to point out, too, that even though Mr. Das was pro se before the immigration judge and the board, this court in Tall v. Mukasey said that even though just because you're pro se doesn't mean that, you know, you get an excuse from exhausting arguments or presenting evidence. So for the foregoing reasons, I have no further questions. The government asks that this court dismiss in part and deny in part the petition for review. Thank you. We have some more time. I'd like to quickly address five minor points. First of all, I believe he said that sometimes country reports are all they have. In this case, a country report has been held by this court very clearly to be insufficient to sustain the burden. So if that is all they had, it is not enough. It also doesn't matter if it's all they had because the burden or the presumption is on the government and the presumption is in favor of Mr. Das. He did not have to put on any evidence. And if that is all the government had, it is simply insufficient. Second of all, I believe the government is misrepresenting the grounds that Mr. Das was granted asylum on. I believe the facts are a little more detailed than just one event at a video shop. I believe these accounts were over the span of four separate years and not just involving the 1986 coup. What effect is there which is in the record and which I think Mr. Hurley referred to is that when it goes back for this hearing, the same I.J. does say that see things a little bit differently and maybe doesn't look upon him quite in the same favorable light because before it had been slightly derivative of the wife. What is your response to that? I believe how she views Mr. Das does not relate to the changed country conditions analysis and does not ease the burden on the government. Third, the government also argues that Mr. Das was granted the presumption. I believe a review of those decisions and in fact the government's brief makes clear that this burden was inappropriately shifted and that the burden was always placed on Das in these proceedings. As to the dates, I believe that the I.J. found Mr. Das credible and any mistake in the dates was not, does not go towards, has no weight. And last, he mentioned that we have, we submitted some changed country conditions evidence and we did so to assist the court, but that isn't necessary, in fact isn't necessary because even if we look at the evidence that is on the record, a closed record under Shoah-Ferra, we see that it's a mixed bag and that the State Department report isn't individualized and in fact confirms the opposite, that these type of attacks, the same type that occurred against Indofegians like Mr. Das, are still occurring. All right. Thank you. I would like to thank you, Mr. Neer, as appearing as amicus counsel. I think both the court and I think probably the government agrees that sometimes it's easier to respond to a counsel brief in this way, and it's a little more regularized and we certainly appreciate your pro bono support. With that, I want to thank both counsel for your argument this morning and the case of Das v. Holder is submitted.
judges: Nelson D. W., Thompson, McKeown